Magistrate Judge Brian A. Tsuchida

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN THE MATTER OF
THE EXTRADITION OF
JASON STEADMAN

MJ15-562

MEMORANDUM OF LAW
REGARDING EXTRADITION

On December 8, 2015, the United States filed its initial Complaint for the extradition of Jason Steadman (Steadman), formerly known as Stephen/Rory Preston, at the request of the Government of Canada pursuant to the Extradition Treaty between the United States and the Government of Canada. The relevant and applicable treaty provisions in full force and effect between the United States and Canada are found in the Extradition Treaty between the United States of America and Canada of December 3, 1971, which entered into force on March 22, 1976 (the 1971 treaty), (TIAS 8237; 27 U.S.T. 983); the Protocol Amending the Extradition Treaty with Canada of January 11, 1988, which entered into force on November 26, 1991 (the 1988 Protocol)(S. TREATY DOC. NO. 101-17 (1990)); and the Second Protocol Amending the Extradition Treaty with Canada of January 12, 2001,which entered into force on April 30, 2003 (the 2001 Protocol) (S. TREATY

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

DOC. NO. 107-11 (2002)). In this matter, the United States acts on behalf of the Canadian government in accordance with United States' treaty obligations.

Canada has submitted a formal request for Jason Steadman's arrest, extradition and surrender, supported by the appropriate documents, to the United States Department of State. The originals of the documents are filed in hard copy with the Clerk of the Court, however copies of each are filed with this pleading for the Court's convenience. By statute, this Court must hold a hearing to consider the evidence of criminality presented by Canada and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention." Title 18, United States Code § 3184. If the Court finds the evidence sufficient, it must certify the same to the Secretary of State, who decides whether to surrender the fugitive "according to the treaty." *Id.*[1]

**INTRODUCTION**

As set forth in the Complaint for Provisional Arrest Warrant and the much more extensively in the Request for Extradition, Steadman is wanted by Canada for trial on charges of (1) First Degree Murder, in violation of § 235(1) of the Criminal Code of Canada, and (2) Arson, in violation of § 434 of the Criminal Code of Canada. These offenses correspond to crimes listed in the Federal Criminal Code, that is, Murder, in violation of Title 18 United States Code, § 1111, and Arson, in violation of Title 18, United States Code, § 81. As set forth more fully in the Complaint for a Provisional Arrest Warrant, filed on December 8, 2015 and incorporated by this reference, Steadman

---

[1] After the Court has completed its "limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender." *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993). "The Secretary exercises broad discretion and may properly consider myriad factors affecting both the individual defendant as well as foreign relations, which the extradition magistrate may not." *Id.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

was charged by Information in Edmonton, Alberta, Canada on October 7, 2015. An arrest warrant was issued that day by the Canadian court.

Steadman has been in the custody at the Federal Detention Center SeaTac since November 12, 2015, when he was arrested for a violation of Supervised Release imposed in a prior federal case arising in the Western District of Washington, *United States v. Jason Steadman, CR09-426.* The Complaint for a Provisional Arrest Warrant resulted in an arrest warrant in this district and the U.S. Marshal Service lodged a detainer on December 9, 2015. Steadman was taken immediately into custody on this Extradition Request on June 10, 2016, upon completion of his supervised release term of confinement.

**FACTUAL SUMMARY**

This is simply a summary: the Request for Extradition, incorporated by this reference, shows the following in greater detail. The Canadian charges arise from the violent death of Steadman's acquaintance, Dwayne Demkiw, early on the morning on May 31, 2015, in Edmonton, Alberta, Canada. At Mr. Demkiw's place of employment, which was his last known location, witnesses found a baseball cap and an 18 inch Gerber machete sheath in a planter within hours of Mr. Demkiw going missing. The baseball cap yielded DNA evidence which matches Steadman's DNA; the Gerber machete has not been found. Steadman did not work at or near that business.

Mr. Demkiw's badly damaged mobile telephone was found on June 7, 2015, next to a concrete barrier on high bridge over a ravine. The bridge is part of a highway system between Mr. Demkiw's last known location in Edmonton and the Queen Elizabeth Highway, the main freeway between Edmonton and Calgary. Calgary is approximately 185 miles south of Edmonton.

Mr. Demkiw's burning car was found in Calgary within a few hours of his disappearance on May 31, 2015, and a man, matching Steadman's description, was photographed leaving the scene. A

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

passerby filmed the burning car and the man because the situation appeared so suspicious. The man threw away what appeared to be a license plate; Mr. Demkiw's car was found without its license plate. DNA analysis of blood stains isolated in the burning car revealed them to be of Mr. Demkiw's blood. Pictures of the man who left the burning car and walked into a nearby transit center have been identified as pictures of Steadman.

Apparently viewed as a romantic rival by Steadman, Mr. Demkiw's remains were not discovered until April 2016, when they were discovered in a wooded area nearly 115 miles south of Edmonton and off of the Queen Elizabeth Highway between Edmonton and Calgary. An examination of the remains reveals clear evidence of linear trauma to the skull and vertebrae.

Steadman's assumption of a false identity while in Canada initially complicated his identification. As more fully explained in other documents, several years before, on September 12, 2012, Steadman presented two pieces of non-picture identification in the name of Canadian Robert Aubrey-Maxwell to the Insurance Corporation of British Columbia (ICBC). Claiming to be Aubrey-Maxwell, Steadman received a new identification card in that name but with Steadman's photograph. Within six months, Steadman had leveraged the ICBC card into an Alberta driver's license and Canadian passport in the name of Aubrey-Maxwell. Both bore Steadman's photograph and physical information. The real Aubrey-Maxwell has not been seen or heard from since September 6, 2012, when he telephoned his grandmother from Vancouver, B.C. That was only six days before Steadman's assumption of his identity and during a period of Steadman's residency in the Vancouver area. Witnesses in Edmonton have confirmed that pictures of Steadman are pictures of the man they knew well as Aubrey-Maxwell.

Because an extradition hearing is not a criminal or civil proceeding, but is *sui generis,* the government offers this memorandum setting out the legal principles that govern the hearing to be

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

held pursuant to Title 18, United States Code § 3184. While extradition law is an area of law unto itself, nevertheless, the Supreme Court has expounded on many of the questions over the years and has settled a number of those principles.

**LEGAL ISSUES**

**1. The Role of the Extradition Judge is Limited**

Extradition is primarily an executive responsibility with a specially defined role for a judicial officer, who is authorized by statute to determine whether to certify to the Secretary of State that the submitted evidence is "sufficient to sustain the charge." Title 18, United States Code § 3184. The Secretary of State, and not the court, makes the decision regarding whether the fugitive should be surrendered to the requesting country. Title 18, United States Code §§ 3184, 3186; *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 828 (11th Cir. 1993). The Executive Branch remains primarily responsible for extradition, while the extradition judge is assigned the limited duty of determining the sufficiency of the request under the applicable treaty provisions. *Martin*, 993 F.2d at 828-829. That judicial function is carried out by conducting the hearing pursuant to Title 18, United States Code, Section 3184.

At the hearing, this Court should consider the evidence presented on behalf of the requesting country and determine whether the legal requirements for certification, as defined in the treaty, statutes and case law, have been established. If any explanatory evidence is offered by the fugitive, the court rules on its admissibility in this hearing. Once the evidentiary record is complete, the court should make written findings of fact and conclusions of law as to each of the elements for certification, including separate findings for each offense as to which extradition is sought. *Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir. 1973). If the court certifies the evidence to the Secretary of State, the court must commit the fugitive to the custody of the United States Marshal to await the

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

further determination by the Secretary regarding surrender to the representatives of the requesting state. The court provides its certification to the Secretary of State together with a copy of the evidence and a transcript of any testimony presented at the hearing. Title18 United States Code § 3184; *see Barapind v. Reno*, 225 F.3d 1100, 1105 (9th Cir. 2000). The decision of whether to surrender the fugitive to the requesting country rests with the Executive Branch, specifically with the Secretary of State.

In fulfilling its function under Section 3184, this Court should liberally construe the applicable extradition treaty in order to effectuate its purpose, namely, the surrender of fugitives to the requesting country. *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 14 (1936); *Factor v. Laubenheimer*, 290 U.S. 276, 301 (1933). *United States ex rel. Sakaguichi Kaulukukui*, 520 F.2d 726, 731 (9th Cir. 1975). In discussing the application of this rule, the District Court for the Southern District of Florida in *McElvy v. Civiletti*, 523 F. Supp. 42, 47 (S.D. Fla. 1981), wrote:

> A narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intentions of the parties to secure equality and reciprocity between them.

*Id.* (quoting *Factor*, 290 U.S. at 287).

In order to carry out a treaty obligation, the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure," *Factor*, 290 U.S. at 298. This country does not expect foreign governments to be versed in our criminal laws and procedures. *Grin v. Shine*, 187 U.S. 181, 184 (1902). Thus, "[f]orm is not to be insisted upon beyond the requirements of safety and justice." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925), *cited in Yapp v. Reno*, 26 F.3d 1562, 1565 (11th Cir. 1994).

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Statements by the United States Department of State as to interpretation of treaties should be given great weight by the court. *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 168 (1999); *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 184-185 (1982) ("Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight.").

2. **The Requirements for Certification are Well-Settled**

An extradition certification is in order where: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the applicable treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought. *Fernandez*, 268 U.S. at 312; *Prasoprat v. Benov*, 421 F.3d 1009, 1013 (9th Cir. 2005); *Mainero v. Gregg*, 164 F.3d 1199, 1205 (9th Cir. 1999).

*A. Authority of the Court Over the Proceedings*

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State." Consequently, both magistrate judges and district judges may render a "certification" under Section 3184. *See Austin v. Healey*, 5 F.3d 598, 601-602 (2d Cir. 1993) (magistrate had authorization to conduct the extradition hearing without specific delegation of authority); *Ward v. Rutherford*, 921 F.2d 286, 287 (D.C. Cir. 1990) (both statute and local rule made plain magistrate's authority to conduct extradition hearing); *Jimenez v. Aristeguieta*, 311 F.2d 547, 553-555 (5th Cir. 1962) (any judicial officer in class authorized by statute may conduct extradition hearing).

*B. Jurisdiction Over the Fugitive*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It is also well settled that the court has jurisdiction over a fugitive found within its jurisdictional boundaries. Title 18, United States Code § 3184 (court "may, upon complaint made under oath, charging any person found within his jurisdiction, . . . issue [its] warrant for the apprehension of the person so charged"). *Pettit v. Walshe*, 194 U.S. 205, 219 (1904); *Grin v. Shine*, 187 U.S. 181 (1902); *In re Coe*, 261 F. Supp. 2d, 1203, 1213 (C.D. Cal. 2003).

*C. Treaty in Full Force and Effect*

The extradition statute, Title 18, United States Code, § 3184, provides for extradition in instances in which a treaty or convention is in force between the requesting state and the United States. *See, e.g., In re Chan Kam-Shu*, 477 F.2d 333 (5th Cir. 1973); *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996). In this case, the government expects to provide a declaration from an attorney in the Office of Legal Adviser for the Department of State, attesting that there is a treaty in full force and effect between the United States and the Canada. The Department of State's determination is entitled to deference from the court. *Terlinden v. Ames*, 184 U.S. 270, 288 (1902); *Then*, 92 F.3d at 854 (since continuing validity of a treaty presents a political question,the judicial must defer to the intentions of the Executive); *see also In re Extradition of Tuttle*, 966 F.2d 1316, 1317 (9th Cir. 1992).

*D. Crimes Covered by the Treaty*

Extradition treaties create an obligation for the United States to surrender fugitives under the circumstances defined in the treaty. Article 2 of the Treaty, as replaced by Article I of the 1988 Protocol, provides for the return of fugitives charged with or convicted of an "extraditable offense" as that term is defined under the treaty. The documents submitted by Canada establish that the fugitive has been charged there with the crimes of First Degree Murder and Arson, in violation of the Criminal Code of Canada.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Article 2 of the Extradition Treaty between the United States and Canada (the 1971 Treaty), as replaced by Article I of the 1988 Protocol, defines offenses as extraditable if the "conduct which constitutes an offense" is punished under the laws of both the United States and Canada by a deprivation of liberty for a term exceeding one year or by a more severe penalty. Consequently, the Court should examine the description of criminal conduct provided by Canada in support of its charge and decide whether that conduct would have been criminal under U.S. law if committed in this country. A requesting country is neither obliged to produce evidence on all elements of a criminal offense nor to establish that its crimes are identical to ours. *Kelly v. Griffin*, 241 U.S. 6, 15 (1916).

The Supreme Court noted in *Collins v. Loisel*, 259 U.S. 309 (1922), that dual criminality is not a technical concept involving a comparison of elements of the two countries' offenses:

> The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions.

259 U.S. at 312; *Clarey v. Gregg*, 138 F.3d 764, 765–66 (9th Cir. 1998) (Although simple homicide in Mexico differs from felony murder in the United States, the category of conduct is similar and satisfies the dual criminality requirement.); *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1407 (9th Cir. 1988) (crimes not identical, but Hong Kong crimes of false accounting and publishing a false statement are substantially analogous to U.S. crime of making a false entry in a bank statement); *Cucuzzella v. Keliikoa*, 638 F.2d 105, 108 (9th Cir. 1981) (Canadian breach of trust statute analogous to federal embezzlement statutes so dual criminality satisfied).

Dual criminality is established if the conduct involved in the foreign offense would be criminal under either U.S. federal law, the law of the state in which the hearing is held, or the law of

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a preponderance of the states. *Cucuzzella*, 638 F.2d at 107–08. The court should "approach challenges to extradition with a view toward finding the offense within the treaty," *McElvy*, 523 F. Supp. at 48, because extradition treaties should be "interpreted with a view to fulfil our just obligations to other powers." *Grin*, 187 U.S. at 184. Foreign governments should not be expected to be versed in our criminal laws and procedures. *Id*. at 184–85.

The criminal conduct alleged in Canada falls squarely within conduct prohibited by the Federal Criminal Code. Title 18, United States Code, Section 1111, entitled **Murder**, says:

> (a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetuate, any arson . . .; is murder in the first degree.

Title 18, United States Code, Section 81 defines **Arson**:

> Whoever, . . . , willfully and maliciously sets fire to or burns any building, structure or vessel, any machinery or building materials or supplies, . . . or attempts or conspires to do such an act, shall be imprisoned for not more than 25 years, …

The term "machinery" in Section 81 may include the burning of a motor vehicle, See 2 Federal Jury Practice and Instructions, § 23:03 (6th ed.) 2015, *United States v. Auginash*, 266 F.3d 781, 785 (8th Cir. 2001). See also, *United States v. Bedonie*, 913 F.2d 782, 789 (10th Cir. 1990). The Request for Extradition set out facts greater than merely sufficient for the Court to conclude that Steadman's conduct, if proven, constitutes felony offenses punishable under the laws of the United States.

*E. Probable Cause that the Fugitive has Committed the Offenses*

The standard of proof to find the evidence "sufficient to sustain the charge . . ." pursuant to Section 3184 is the familiar domestic requirement of probable cause. The court must conclude there is probable cause to believe that the crimes charged by Canada were committed and the person before the court committed them. *Mirchandani v. United States*, 836 F.2d 1223, 1226 (9th Cir.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1988) (probable cause standard applicable in extradition proceeding is whether any evidence exists warranting a finding that there was a reasonable ground to believe the accused guilty). The evidence is sufficient and probable cause is established if a person of ordinary prudence and caution can conscientiously entertain a reasonable belief in the probable guilt of the accused. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). The Supreme Court stated in *Benson v. McMahon*, 127 U.S. 457, 463 (1888), that:

> the proceeding before the commissioner is not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him, but rather of the character of those preliminary examinations which take place every day in this country before an examining or committing magistrate for the purpose of determining whether a case is made out which will justify the holding of the accused, either by imprisonment or under bail, to ultimately answer to an indictment, or other proceeding, in which he shall be finally tried upon the charge made against him.

*See also Collins*, 259 U.S. 309, 316 ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."); *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) ("Competent evidence to establish reasonable grounds is not necessarily competent evidence to convict."). *Accord Barapind v. Enomoto*, 400 F.3d 744, 752 (9th Cir. 2005). The identification of Steadman by witnesses in Calgary and Edmonton, his DNA on items related to the homicide, the pictures of him leaving the victim's burning car within hours of the homicide are only a few of the ample facts establishing probable cause to believe that Mr. Steadman committed the crimes alleged.

### 3. Extradition is *Sui Generis* and Follows Its Own Procedures

#### *A. An Extradition Hearing Is Not a Criminal Proceeding*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The extradition hearing prescribed by Title 18, United States Code § 3184 is unique in nature. *See, e.g.*, *Martin*, 993 F.2d at 828; *Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2d Cir. 1976) (extradition is *sui generis*). As described in *Jhirad*, an extradition hearing is *sui generis*, meaning its own type of case, with its structure and process defined by statute and treaty. *Id.* An extradition hearing is not a criminal proceeding; its purpose is to decide the sufficiency of the charge under the treaty, not guilt or innocence. *Neely v. Henkel*, 180 U.S. 109, 123 (1901). The limited nature of the hearing has resulted in special procedural and evidentiary rules that apply. For example, the person whose extradition is sought is not entitled to the rights available in a criminal trial. *Id. at* 122; *accord*, *Charlton v. Kelly*, 229 U.S. 447, 461 (1913); *Martin*, 993 F.2d at 829. The purpose of an extradition hearing under § 3184 is not to try the underlying charge; that is for the foreign court. *Neely*, 180 U.S. at 123.

The Federal Rules of Criminal Procedure do not apply to extradition proceedings. Rule 1(a)(5)(A) states that the rules do not govern proceedings regarding "the extradition and rendition of a fugitive." The Federal Rules of Evidence are also inapplicable. Rule 1101(d)(3) provides: "The rules (other than with respect to privileges) do not apply . . . [to proceedings for] extradition or rendition." *See Melia v. United States*, 667 F.2d 300 (2d Cir. 1981); *Greci v. Birknes*, 527 F.2d 956 (1st Cir. 1976).

The fugitive has no absolute right to discovery. *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984). "[D]iscovery in an international extradition hearing is limited and lies within the discretion of the magistrate." *In re Extradition of Kraiselburd*, 786 F.2d 1395, 1399 (9th Cir. 1986); *cf. Oen Yin-Choy*, 858 F.2d at 1407 ("Although there is no explicit statutory basis for ordering discovery in extradition proceedings, the extradition court has the inherent power to order such discovery procedures as law and justice require.").

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The fugitive's constitutional rights are limited. The fugitive has no right to cross-examine witnesses who might testify at the hearing. *Oen Yin-Choy*, 858 F.2d at 1407. There is no Sixth Amendment right to a speedy trial. *Yapp v. Reno*, 26 F.3d 1562, 1565 (11th Cir. 1994); *Martin*, 993 F.2d at 829; *Sabatier v. Dabrowski*, 586 F.2d 866, 869 (1st Cir. 1978). The Fifth Amendment guarantee against double jeopardy does not apply to successive extradition proceedings. *Collins*, 262 U.S. at 429; *In re Extradition of McMullen*, 989 F.2d 603, 612–13 (2d Cir. 1993). Absent egregious government misconduct, the Fourth Amendment and the exclusionary rule also are not applicable in extradition proceedings. *Magisano v. Locke*, 545 F.2d 1228, 1230 (9th Cir. 1976) (argument as to alleged illegalities in wiretapping were not relevant). Finally, the defendant does not have the right to confront his accusers. *Bingham v. Bradley*, 241 U.S. 511, 517 (1916).

*B. Extradition Hearings Rely on Written Submissions and Do Not Require Live Witnesses*

A certification of extradition may be, and typically is, based entirely on the authenticated documentary evidence and information provided by the requesting government. *See, e.g.*, *Bovio v. United States*, 989 F.2d 255, 259-261 (7th Cir. 1993) (Swedish investigator's statement sufficient to establish probable cause); *Matter of Extradition of Mainero*, 990 F. Supp. 1208, 1212-1213 (S.D. Cal. 1997) (statements of co-conspirators and other witnesses sufficient in extradition to Mexico for murder). The finding may also be based upon written statements by the foreign prosecutor or judge summarizing the evidence. *Rice v. Ames*, 180 U.S. 371, 375-376 (1901); *accord Glucksman v. Henkel*, 221 U.S. 508, 513-514 (1911).

The federal statute and the applicable treaty govern both the nature of and the admissibility of the evidence at an extradition hearing. The treaty applicable in this case, at Articles 9 and 10, list the requirements of a submission by Canada and Article 10(2) in the 2001 Protocol requires that the documents are "authenticated by an officer of the Department of Justice of Canada and are certified

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

by the principal diplomatic or consular officer of the Unites States in Canada." The Request for Extradition was authenticated by such a person Jeffrey G. Johnston, Senior Counsel for the International Assistance Group, Department of Justice of Canada, and by Bruce A. Heyman, United States Ambassador to Canada, attesting to the authenticity of the foreign official's signature. Title 18, United States Code, § 3190 provides that "properly and legally authenticated" documentary evidence including "depositions, warrants, or other papers or copies thereof *shall be admitted*." *See* Title 18, United States Code § 3190 (*emphasis added*)[2]. *See Barapind*, *360 F. 3d at 1069*; *also Collins*, 259 U.S. at 313 (1922); *Mainero*, 990 F. Supp. at 1212-1213. The documents comply with the Treaty requirements.

Extradition treaties do not require or even anticipate the testimony of live witnesses[3] at the hearing because to do so "would defeat the whole object of the treaty." *Yordi v. Nolte*, 215 U.S. 227, 231 (1909); *see also Bingham*, 241 U.S. at 517 (1916); *Afanasjev v. Hurlburt*, 418 F.3d 1159, 1163-1165 (11th Cir. 2005); *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986); *Shapiro v. Ferrandina*, 478 F.2d at 902. Hearsay evidence is admissible at extradition hearings and fully supports the court's findings leading to a certification under Section 3184. *Collins*, 259 U.S. at 317; *Enami v. U. S. Dist. Court for N. Dist. Cal.*, 834 F.2d 1444, 1450–53 (9th Cir. 1987). In *Bingham*, the Supreme Court rejected the respondent's claim that *ex parte* witness affidavits submitted in

---

[2] Depositions, warrants or other papers or copies thereof offered in evidence upon a hearing of any extradition case shall be received and admitted as evidence on such hearing for all purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required. Title 18, United States Code § 3190.

[3] **Error! Main Document Only.** In fact, no United States extradition treaty, even those most recently negotiated, specifically require live witnesses.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

support of his extradition to Canada should not be considered because he had not had the opportunity to cross-examine those witnesses. The Court referred to the applicable treaty language, which obligated the United States to extradite "upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial, if the crime or offense had there been committed." *Bingham*, 241 U.S. at 517. As Title 18, United States Code, § 3190 does today, its predecessor, applicable in *Bingham*, provided for the admissibility at the extradition hearing of depositions, warrants and similar documents upon proper certification by the U.S. diplomatic or consular officer. This principle of extradition law is as firmly-rooted today as it was in 1916 when the Supreme Court decided *Bingham.*[4] *See Zanazanian v. United States*, 729 F.2d 624, 626-627 (9th Cir. 1984) (applying *Bingham* to extradition to Sweden); *Shapiro*, 478 F.2d at 902 (obviating necessity of confronting accused with witnesses against him is "one of the prime objects of bi-lateral extradition agreements"). Even the advent of modern transportation and communication has not changed this firmly-rooted posture of the U.S. courts. *See, Shapiro*, 478 F.2d at 902.

*C. The Fugitive's Evidence is Quite Limited, as in a Preliminary Hearing*

Due to the nature and limited purpose of an extradition hearing under Section 3184 and the importance of the international obligations of the United States under an extradition treaty, a fugitive's opportunity to challenge the evidence introduced against him is circumscribed. A fugitive may not introduce evidence that contradicts the evidence submitted on behalf of the requesting country, but may introduce evidence explaining the submitted evidence. "Generally, evidence that

---

[4] The principle dates back well into the 19th century. In *In re Heilborn*, 11 F. Cas 1025, 1029 (S.D. N.Y. 1854), the district court ordered extradition based upon a presentation of documentary and other hearsay evidence.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

explains away or completely obliterates probable cause is the only evidence admissible at an extradition hearing, whereas evidence that merely controverts the existence of probable cause, or raises a defense, is not admissible." *Barapind*, 400 F.3d at 749 (quoting *Mainero v. Gregg*, 164 F.3d 1199, 1207, n.7 (9th Cir. 1999).

The Supreme Court in *Collins, supra*, quoted with approval the district court's reasoning in *In re Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883), explaining why the scope of an extradition hearing is so limited. In *In re Wadge*, the district court rejected the argument that a fugitive should be given an extensive hearing in the extradition proceedings:

> If this were recognized as the legal right of the accused in extradition proceedings, it would give him the option of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter. The result would be that the foreign government though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here. This would be in plain contravention of the intent and meaning of the extradition treaties.

*Collins*, 316 (*quoting In re Wadge,* 15 F. at 866); *accord Charleton*, 229 U.S. at 461.

The extent to which the fugitive may offer explanatory proof is largely within the discretion of the committing judicial officer. *Hooker v. Klein*, 573 F.2d 1360, 1369 (9th Cir. 1978). The category of explanatory evidence is not large in light of the limited purpose of the hearing, *i.e.,* to determine the sufficiency of the evidence to sustain the charge, and in light of the overarching goal of the proceeding which is to effectuate the purposes of the treaty. The extradition hearing excludes evidence that requires the court to make determinations outside of the scope of the hearing or within the province of the ultimate trier of fact, particularly when those determinations rest on foreign law.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Such evidence exceeds the limits of "explanatory"or "obliterating" evidence and is not properly before the court. *In re Extradition of Solis*, 402 F. Supp.2d 1128, 1132 (C.D. CA 2005).

In applying the prohibition on considering "contradictory evidence" and the allowance of "explanatory evidence," others courts have followed the explanation of these concepts elucidated by the court in *In re the Extradition of Sindona:*

> The distinction between "contradictory evidence" and "explanatory evidence" is difficult to articulate. However, the purpose behind the rule is reasonably clear. In admitting "explanatory evidence," the intention is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and having some reasonable chance of negating a showing of probable cause. The scope of this evidence is restricted to what is appropriate to an extradition hearing. The decisions are emphatic that the extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits.

450 F.Supp. 672, 685 (S.D. N.Y. 1978), *aff'd sub nom Sindona v. Grant*, 619 F.2d 167 (2d Cir. 1980).

*D. The Fugitive is Not Permitted to Present Technical and Affirmative Defenses*

A court should reject defenses against extradition that "savor of technicality" as they are peculiarly inappropriate in dealings with a foreign nation. For example, a variance between the charges pending in the foreign state and the complaint filed on behalf of that state in our federal courts is not a defense to surrender. *Glucksman*, 221 U.S. 508 at 513-514; *accord Bingham*, 241 U.S. at 517; *United States ex rel. Bloomfield v. Gengler*, 507 F.2d 925, 927-1024 (2d Cir. 1974); *Shapiro*, 478 F.2d at 904.

It is also well settled that affirmative defenses to the merits of the charge are not to be entertained in extradition hearings. *Charlton*, 229 U.S. at 462; *Collins*, 259 U.S. at 316-317; *Hooker*, 573 F.2d at 1368. A fugitive may not introduce evidence that (1) merely conflicts with the evidence submitted on behalf of the demanding state, *Collins*, 259 U.S. 309 at 315-317; (2) attempts

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to establish an alibi, *Shapiro*, 478 F.2d at 901; (3) suggests an insanity defense, *Charlton*, 229 U.S. at 462; *Hooker*, 573 F. 2d at1638 ("the extraditing court properly may exclude evidence of alibi, of facts contradicting the government's proof, or of a defense such as insanity"); or (4) seeks to impeach the credibility of the demanding country's witnesses. *Bovio*, 989 F.2d at 259. These issues, which require factual and credibility determinations, are for the court in the requesting country to resolve at a trial of the charges.

*E. The Executive Considers Matters Other Than Sufficiency; Rule of Non-Inquiry*

Other than the sufficiency of the evidence, all matters that may be raised by the fugitive as defenses to extradition are to be considered by the Secretary of State, not by this Court. See Title 18, United States Code, §§ 3184, 3186. In making extradition determinations, "[t]he Secretary exercises broad discretion and may properly consider factors affecting both the individual defendant as well as foreign relations - factors that may be beyond the scope of the magistrate judge's review." *Sidali v. I.N.S.*, 107 F.3d 191, 195 n.7 (3rd Cir. 1997). The Secretary takes into account humanitarian claims and applicable statutes, treaties, or policies regarding appropriate treatment in the receiving country. *See*, *Ntakirutimana v. Reno*, 184 F.3d 419, 430 (5th Cir. 1999). This is consistent with the long-held understanding that surrender of a fugitive to a foreign government is "purely a national act . . . performed through the Secretary of State," within the Executive's "powers to conduct foreign affairs." *See In re Kaine*, 55 U.S. 103, 110 (1852).

Therefore, under this constitutionally-based rule of judicial non-inquiry, a fugitive's contention that the extradition request is politically motivated or that the justice system of the requesting state is unfair should be addressed by the Secretary of State. It is not the role of the court to look behind the extradition request to the motives of the requesting country. *Ordinola v. Hackman*, 478 F.3d 588, 604 (4th Cir. 2007) ("the motives of the requesting government are

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

irrelevant to our decision" and "must be addressed to the Secretary of State"); *Eain v. Wilkes*, 641 F.2d 504, 513 (7th Cir. 1981) (sole discretion of Secretary of State to determine whether foreign country's request for extradition is a subterfuge). Likewise, the court should not investigate the fairness of the requesting country's criminal justice system. *United States v. Lui Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997) *See also, Blaxland v. Commonwealth Director*, 323 F.3d 1198, 1208 (9th Cir. 2003).

Similarly, the Secretary of State has sole discretion under Title 18, United States Code § 3186 and the relevant treaty to determine whether a request for extradition should be denied on humanitarian grounds because of procedures or treatment awaiting the surrendered fugitive. *See Quinn v. Robinson*, 783 F.2d 776, 790-791 (9th Cir. 1986); *Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2d Cir. 1990)("the degree of risk to [the accused's] life from extradition is an issue that properly falls within the *exclusive purview* of the executive branch.")(quoting *Sindona*, 619 F. 2d at 174). Respect for and confidence in the Executive's exercise of discretion is well placed, as stated in *Ahmad*:

> the district court proceeded to take testimony from both expert and fact witnesses and received extensive reports, affidavits, and other documentation concerning Israel's law enforcement procedures and its treatment of prisoners. This, we think, was improper. The interests of international comity are ill-served by requiring a foreign nation . . . to satisfy a United States district judge concerning the fairness of its laws and the manner in which they are enforced. It is the function of the Secretary of State to determine whether extradition should be denied on humanitarian grounds. So far as we know, the Secretary never has directed extradition in the face of proof that the extraditee would be subjected to procedures or punishment antipathetic to a federal court's sense of decency. Indeed, it is difficult to conceive of a situation in which a Secretary of State would do so.

*Ahmad*, 910 F.2d at 1067; accord, *Martin*, 993 F.2d 824 at 830("humanitarian consideration are matters properly reviewed by the Department of State). Further, a fugitive's contention that he or she will be tried in the extraditing country for crimes other than those for which extradition will be

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

granted must be rejected as baseless or, if not baseless, as beyond the responsibility of the court, for the United States government does not presume that the demanding government will seek a trial in violation of a treaty. *Bingham*, 241 U.S. at 514.

**CONCLUSION**

Based on the above law and Request for Extradition, the United States requests that the court conduct a hearing, pursuant to Title 18, United States Code, Section 3184, to determine that the submission on behalf of Canada is sufficient to sustain each of the charges under the provisions of the applicable treaty and to certify the extradition of the fugitive for each of those charges to the Secretary of State for possible surrender to Canada.

Dated this 26th day of July, 2016.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

/s/ *Susan M. Roe*
SUSAN M. ROE
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
E-mail: susan.roe@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s). I hereby certify that I have served the attorney(s) of record for the defendant(s) that are non CM/ECF participants via e-mail and/or telefax.

*s/ Lissette Duran-Leutz*
Lissette Duran-Leutz
Paralegal Specialist
United States Attorney's Office
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: (206) 553-7234
Fax: (206) 553-2502
E-mail: Lissette.I.Duran-Leutz@usdoj.gov