# U.S. DEPARTMENT OF JUSTICE DOCUMENTS



Embassy of the United States of America

Certificate to be Attached to Documentary Evidence Accompanying
Requisitions in the United States for Extradition

## AMERICAN FOREIGN SERVICE

Ottawa, Canada, May 9, 2016

I, Bruce A. Heyman, Ambassador of the United States of America at Ottawa,
Canada, hereby certify that the annexed papers, being authenticated supporting
documents proposed to be used upon an application for the extradition from the
United States of JASON STEADMAN, who is wanted in the Province of Alberta to
stand trial for first degree murder and arson under the *Criminal Code of Canada*
are properly and legally authenticated so as to entitle them to be received in
evidence for similar purposes by the tribunals of Canada, as required by Title
18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to
be affixed this 9th day of May, 2016.

_____
Bruce A. Heyman
Ambassador of the
United States of America

 Department of Justice    Ministère de la Justice
Canada                    Canada

Ottawa, Canada
K1A 0H8

## CERTIFICATE OF AUTHENTICATION

*IN THE MATTER OF the extradition of **JASON STEADMAN** from the United States of America to Alberta, Canada*

I, JEFFREY G. JOHNSTON, Senior Counsel for the International Assistance Group, Department of Justice of Canada, do hereby certify:

THAT attached to this Certificate is authenticated documentation presented by Canada in support of the extradition of **JASON STEADMAN** who is wanted in the Province of Alberta to stand trial for first degree murder and arson under the *Criminal Code.*

THAT the documentation attached to this certificate is composed of:

- the original Affidavit of Terry E. Hofmann, Crown Prosecutor for the Province of Alberta, sworn on May 6th, 2016;
- the original Affidavit of Rob Bilawey, Detective for the Edmonton Police Service, sworn on May 6th 2016.

THAT Billie-Jean Kitt whose original signature appears at the end of the Affidavit of Terry E. Hofmann is a Commissioner of Oaths in and for the Province of Alberta, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

THAT Billie-Jean Kitt whose original signature appears at the end of the Affidavit of Rob Bilawey and exhibits thereto is a Commissioner of Oaths in and for the Province of Alberta, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

The Seal of the Minister of Justice of Canada is hereby affixed this 9th day of May, 2016.

_____
Jeffrey G. Johnston

Canada

CANADA                                HER MAJESTY THE QUEEN

PROVINCE OF ALBERTA                              v.

CITY OF EDMONTON                        JASON STEADMAN

**IN THE MATTER of a request by Canada for the
Extradition of Jason STEADMAN from the United
States of America
With respect to offences under the *Criminal Code***

---

### AFFIDAVIT OF LAW OF TERRY E. HOFMANN

---

I, Terry E. Hofmann, Barrister and Solicitor, of the City of Edmonton, in the Province of Alberta, Canada, lawyer, SOLEMNLY SWEAR AS FOLLOWS:

## A.   QUALIFICATIONS

1.      I am a citizen of Canada and a resident of the City of Edmonton, in the Province of Alberta, Canada.

2.      I was called to the Bar of the Province of Alberta in February of 1991. From that time until the present, I have been a member in good standing of the Law Society of Alberta, and as such, I am entitled to practice law and have practiced law in the Province of Alberta as a Barrister and Solicitor.

3.      I was employed in private practice, primarily as a criminal defense lawyer from 1991 to 2006. In February 2006, I joined the Fort Saskatchewan Crown office, an office with the Alberta Crown Prosecution Service ("ACPS"), under the Ministry of the Attorney General for the Province of Alberta as Crown counsel. In February 2011, I transferred to the Edmonton Prosecutions, an office within the ACPS, continuing in my capacity as Crown counsel. By virtue of my employment and as directed by the Attorney General of Alberta, I am authorized to act as his/her agent.

4.     The ACPS is a branch of the Criminal Division of the Ministry of the Attorney General.  At present it is staffed by approximately 330 lawyers, all of whom focus practice in criminal law.  The responsibilities of counsel with the ACPS includes representing the Crown in all prosecutions and appeals for the Province of Alberta before all levels of criminal court including the Provincial Court of Alberta (Criminal Division), the Court of Queen's Bench of Alberta, the Alberta Court of Appeal and the Supreme Court of Canada.

5.     The ACPS has been directed to exercise responsibility on behalf of the Attorney General of Alberta with respect to applications by the Attorney General of Alberta for the extradition to Canada from foreign jurisdictions of persons charged in Alberta with offences contrary to the *Criminal Code*.  Extradition in Canada in governed by the *Extradition Act*, 1999, c. C-18.  In addition, the ACPS is responsible for carriage of applications for assistance by Canada (on behalf of Alberta) and made to Canada under the *Mutual Legal Assistance Treaty (MLAT)*.

6.     From 2006 to the current date, I have represented the Crown on various motions, applications, preliminary inquiries and trials at various levels of court including both the Provincial Court of Alberta (Criminal Division) and the Court of Queen's Bench of Alberta.

7.     As a result of my training and extensive experience, I am knowledgeable about criminal procedure and jurisprudence arising from both the *Criminal Code* and the common law in Canada.

## B.     HISTORY OF THIS EXTRADITION REQUEST

8.     Canada is seeking the extradition of the accused Jason STEADMAN (hereinafter "STEADMAN") on the charges of:

   (a)   First Degree Murder, contrary to Section 235(1) of the *Criminal Code*;

   (b)   Arson, contrary to Section 434 of the *Criminal Code*.

alleged to have been committed in the Province of Alberta, Canada.

9.    The offences are set out in the Information 151221728P1 sworn on October 7, 2015 by
      Brian James Robertson of the Edmonton Police Service before Justice of the Peace
      Stewart N. Douglas.  Attached hereto and marked as Exhibit "A" to my affidavit is a
      copy of the sworn Information.  A Warrant for arrest for these offences was issued on
      October 7, 2015 by Justice of the Peace Stewart N. Douglas.  Attached hereto and
      marked as Exhibit "B" to my affidavit is a copy of the Warrant of Arrest.

10.   I have carefully reviewed the copy of the Information and Warrant for Arrest, as well
      as the Statement of Facts affidavit of Rob Bilawey which accompany this extradition
      request.  Based on the Statement of Facts affidavit and these documents, I verily
      believe that Jason STEADMAN is charged with First Degree Murder contrary to
      Section 235(1) and Arson contrary to Section 434 both sections in the *Criminal Code*
      as outlined in paragraph 8 of my affidavit.

## C.    RELEVANT LEGISLATIVE PROVISIONS

### *(i) Introduction*

11.   The *Criminal Code* of Canada, Revised Statutes of Canada, 1985, Chapter C-46, as
      amended, is a statute enacted by the Parliament of Canada.  It contains the law
      relating to criminal offences for the whole of Canada.  It therefore applies to
      Alberta.  The particular sections of the *Criminal Code of Canada* relevant
      to this extradition request were in force on the day of the alleged offences and are
      currently in force.

12.   Under Canadian law, criminal offences are divided into three categories:

      i)    indictable offences;

      ii)   summary conviction offences;

      iii)  offences that are, at the election of the prosecution, either indictable or
      summary conviction (referred to also as "Crown election" or "hybrid"
      offences).

13.   Canadian law has abolished the common law division of offences into felonies and

misdemeanours. However, indictable offences are roughly equivalent to felonies and summary conviction offences are roughly equivalent to misdemeanours. Generally speaking, indictable offences are the more serious offences carrying the more severe penalties and summary conviction offences are less serious offences and carrying less severe penalties.

### (ii) The Criminal Code offences alleged against Jason STEADMAN

### FIRST DEGREE MURDER

14.     Section 229 of the *Criminal Code* outlines "murder". It read as follows:

229.  Culpable homicide is murder

(a)     where the person who causes the death of a human being
(i)       means to cause his death, or
(ii)      means to cause him bodily harm that he knows is likely to cause his death, and is reckless whether death ensues or not;

(b)     where a person, meaning to cause death to a human being or meaning to cause him bodily harm that he knows is likely to cause his death, and being reckless whether death ensues or not, by accident or mistake causes death to another human being, notwithstanding that he does not mean to cause death or bodily harm to that human being; or

(c)     where a person, for an unlawful object, does anything that he knows or ought to know is likely to cause death, and thereby causes death to a human being, notwithstanding that he desires to effect his object without causing death or bodily harm to any human being.

231.  (1) Murder is first degree murder or second degree murder.

(2) Murder is first degree murder when it is planned and deliberate.

235.  (1) Every one who commits first degree murder or second degree murder is guilty of an indictable offence and shall be sentenced to imprisonment for life.

(2) For the purposes of Part XXIII, the sentence of imprisonment for life prescribed by this section is a minimum punishment.

## ARSON

15. Section 433 of the *Criminal Code* outlines "arson". It read as follows:

> **433** Every person who intentionally or recklessly causes damage by fire or explosion to property, whether or not that person owns the property, is guilty of an indictable offence and liable to imprisonment for life where
>
> (a)    the person knows that or is reckless with respect to whether the property is inhabited or occupied; or
>
> (b)    the fire or explosion causes bodily harm to another person.
>
> **434** Every person who intentionally or recklessly causes damage by fire or explosion to property that is not wholly owned by that person is guilty of an indictable offence and liable to imprisonment for a term not exceeding fourteen years.

## D.    INDICTABLE OR SUMMARY CONVICTION OFFENSE

16. Both offences are straight indictable offences.

## E.    NO LIMITATION PERIOD IN THIS CASE

17. In Canada there is no statutory limitation period in respect of indictable offences. No limitation period applies to the offences at issue in this case. In Canadian law, the rule relating to the prosecution of indictable offences is that, in the absence of a specific statutory provision to the contrary, the initiation of a prosecution for an indictable offence is not barred by the passage of any period of time.

## F.    OPINION

18. I have carefully read and reviewed the charges against Jason STEADMAN in the Information which is Exhibit "A" to my affidavit.

19. I have carefully read and reviewed the Arrest Warrant for Jason STEADMAN which is Exhibit "B" to my affidavit.

20.   I have also carefully read and reviewed the Statement of Facts-Affidavit of Rob Bilawey of the Edmonton Police Service.

21.   In Canada, in order to find an accused guilty of an offence contrary to the *Criminal Code*, the trier of fact must be satisfied that the guilt of the accused has been established beyond a reasonable doubt.

22.   In my opinion, the evidence disclosed by the affidavit of Rob Bilawey and the exhibits attached thereto, make out a *prima facie* case of the guilt of STEADMAN on the counts alleged in Exhibit "A" of my affidavit. That is to say, a reasonable jury, properly instructed in the law, could on that evidence find beyond a reasonable doubt that STEADMAN is guilty of the charges set out in Exhibit "A". I am also of the opinion that these offences are properly triable in the Province of Alberta, and that the criminal courts in the Province of Alberta have jurisdiction to try STEADMAN for these offences.

23.   The offences listed in Exhibit "A" are not political offences or offences of a political character. The offences were not charged for the purpose of prosecuting Jason STEADMAN on account of his race, religion, nationality or political opinion. If returned to Canada, Jason STEADMAN will not be prejudiced by reason of his race, religion, nationality or political opinion. If returned to Canada, STEADMAN will have the benefit of procedural safeguards to ensure that he will not be prejudiced by reason of his race, religion, nationality or political opinion.

24.   This Statement of Law affidavit is made in good faith in support of a request by Canada for the extradition of STEADMAN for the aforementioned criminal offences, and is made for no improper purpose.

**SOLEMNLY SWORN BEFORE ME**                    )
at the City of Edmonton                          )
in the Province of Alberta, Canada               )
this __6__ day of May, 2016                      )
                                                 Terry E. Hofmann

A Commissioner of Oaths for the
Province of Alberta, Canada

Billie-Jean Kitt
**COMMISSION EXPIRES**
April 29, 20_17_



CANADA
PROVINCE OF ALBERTA
PROVINCE  D'ALBERTA

FILE NO. 151221728P1
POLICE EPS  # 15-78318

INFORMATION
ON BEHALF OF HER MAJESTY THE QUEEN

DENONCIATION
AU NOM DE SA MAJESTE LA REINE

THIS IS THE INFORMATION OF

    BRIAN JAMES ROBERTSON
OF EDMONTON

HEREINAFTER CALLED THE INFORMANT

LES PRESENTES CONSTITUENT

, A PEACE OFFICER
  , ALBERTA,

CI-APRES APPELE LE DENONCIATEUR

THE INFORMANT SAYS THAT HE HAS
REASONABLE GROUNDS TO BELIEVE
AND DOES BELIEVE THAT:

LE DENONCIATEUR DECLARE QU'IL A
DES MOTIFS RAISONNABLES
DE CROIRE ET QU'IL CROIT QUE:

01    JASON STEADMAN (DOB 1974      ) OF NO FIXED ADDRESS, AB

    COUNT   1: ON OR ABOUT THE 31ST DAY OF MAY, 2015, AT OR NEAR
    EDMONTON, ALBERTA, DID UNLAWFULLY CAUSE THE DEATH OF DWAYNE DEMKIW,
    THEREBY COMMITTING FIRST DEGREE MURDER, CONTRARY TO SECTION 235(1) OF
    THE CRIMINAL CODE OF CANADA.
                                                          ( I )

    COUNT   2: ON OR ABOUT THE 31ST DAY OF MAY, 2015, AT OR NEAR CALGARY,
    ALBERTA, DID INTENTIONALLY OR RECKLESSLY CAUSE DAMAGE BY FIRE OR
    EXPLOSION TO: A MOTOR VEHICLE WHICH PROPERTY WAS NOT WHOLLY OWNED BY
    JASON STEADMAN, CONTRARY TO SECTION 434 OF THE CRIMINAL CODE OF
    CANADA.
                                                           ( I )

SWORN BEFORE ME THIS
ASSERMENTE DEVANT MOI

7 DAY OF OCTOBER  , 2015,
AT EDMONTON, ALBERTA

)
)
)
)

JUSTICE OF THE PEACE  One Commissioner for Oaths
JUGE DE PAIX  in and for the Province of Alberta
STEWART N. DOUGLAS
Justice of the Peace

SIGNATURE OF
INFORMANT

SIGNATURE DU
DENONCIATEUR

ACCUSED           ENDORSEMENTS
ALL WARRANT: OCTOBER 07, 2015, EDM #JP    13:59        ID: C014037358

This is Exhibit " A " referred to in the
Affidavit of
Terry E. Hofmann
Sworn before me this    6    day
of  May    A.D. 2016
A Commissioner for Oaths in and for
the Province of Alberta

ENDORSEMENT CONTINUED......................                                  PAGE: _____

ACCUSED: *Steadman, Jason*          DOCKET #(s): *15122172871*

---

1.  DATE: _____@ EDMONTON

COURTROOM: _____

JUDGE: _____

CROWN: _____(FED)_____

DEFENCE: _____ Today Only ☐
                                    DOC ☐

CLERK: _____

ACCUSED:PRESENT _____ NOT PRESENT_____

         Appeared by CCTV_____

Adjourned:
☐ to obtain Counsel   ☐ to obtain Disclosure      ACCUSED :
☐ Resolution Offer    ☐ AMP/MH Consideration      ☐ REQUIRED
☐ Consult with Client ☐ Protocol                  ☐ NOT REQUIRED
☐ Warrant to issue (non appearance) pursuant to S.511(3)cc
   warrant not to be executed before remand date
☐ WTH To Continue                    ☐ WTH Vacated

REMANDED UNTIL THE _____DAY

OF _____2015, AT _____
                  #

---

2. DATE: _____@ EDMONTON

COURTROOM: _____

JUDGE: _____

CROWN: _____(FED)_____

DEFENCE: _____ Today Only ☐
                                    DOC ☐

CLERK: _____

ACCUSED:PRESENT _____ NOT PRESENT_____

         Appeared by CCTV_____

Adjourned:
☐ to obtain Counsel   ☐ to obtain Disclosure      ACCUSED :
☐ Resolution Offer    ☐ AMP/MH Consideration      ☐ REQUIRED
☐ Consult with Client ☐ Protocol                  ☐ NOT REQUIRED
☐ Warrant to issue (non appearance) pursuant to S.511(3)cc
   warrant not to be executed before remand date
☐ WTH To Continue                    ☐ WTH Vacated

---

3.  DATE: _____@ EDMONTON

COURTROOM: _____

JUDGE: _____

CROWN: _____(FED)_____

DEFENCE: _____ Today Only ☐
                                    DOC ☐

CLERK: _____

ACCUSED:PRESENT _____ NOT PRESENT_____

         Appeared by CCTV_____

Adjourned:
☐ to obtain Counsel   ☐ to obtain Disclosure      ACCUSED :
☐ Resolution Offer    ☐ AMP/MH Consideration      ☐ REQUIRED
☐ Consult with Client ☐ Protocol                  ☐ NOT REQUIRED
☐ Warrant to issue (non appearance) pursuant to S.511(3)cc
   warrant not to be executed before remand date
☐ WTH To Continue                    ☐ WTH Vacated

---

4.  DATE: _____@ EDMONTON

COURTROOM: _____

JUDGE: _____

CROWN: _____(FED)_____

DEFENCE: _____ Today Only ☐
                                    DOC ☐

CLERK: _____

ACCUSED:PRESENT _____ NOT PRESENT_____

         Appeared by CCTV_____

Adjourned:
☐ to obtain Counsel   ☐ to obtain Disclosure      ACCUSED :
☐ Resolution Offer    ☐ AMP/MH Consideration      ☐ REQUIRED
☐ Consult with Client ☐ Protocol                  ☐ NOT REQUIRED
☐ Warrant to issue (non appearance) pursuant to S.511(3)cc
   warrant not to be executed before remand date



```
                    W A R R A N T   F O R   A R R E S T                        AG 42
                                                                              REV 02/8
                    M a n d a t   d´a r r e s t a t i o n            CRIMINAL CODE FORM
                                                                    Code criminel formule
```

CANADA                                                                          PAGE 0
PROVINCE OF ALBERTA/Province d`Alberta            FILE-TK NO/No de dossier: 151221728P1-01-001
POLICE FILE NO/No du dossier de police: 15-78318
ENFORCEMENT AGENCY/Organisme chargé de l´application de la loi: EPS

TO THE PEACE OFFICERS IN THE SAID PROVINCE:      Aux agents de la paix de ladite province:

THIS WARRANT IS ISSUED FOR THE ARREST OF         Le présent mandat est décerné pour l´arrestation de

   *STEADMAN* JASON                               SEX/sexe: M

   DATE OF BIRTH/Date de naissance: 1974▓

OF/de   NO FIXED ADDRESS
      AB

HEREINAFTER CALLED THE ACCUSED.                  ci-après appelé le prévenu.

WHEREAS THE ACCUSED HAS BEEN CHARGED THAT        ATTENDU QUE le prévenu a été inculpé d´avoir

   ON OR ABOUT THE 31ST DAY OF MAY, 2015, AT OR NEAR EDMONTON, ALBERTA, DID
   UNLAWFULLY CAUSE THE DEATH OF DWAYNE DEMKIW, THEREBY COMMITTING FIRST
   DEGREE MURDER, CONTRARY TO SECTION 235(1) OF THE CRIMINAL CODE OF
   CANADA.

                              CROWN PROCEEDS BY INDICTMENT

**** ADDITIONAL CHARGES ****

   151221728P1-01-002 - 434 CC  ON MAY 31, 2015 AT CALGARY  (INDICTABLE)      EPS    15-78318

AND WHEREAS:                                     ET ATTENDU:

There are reasonable grounds to believe that it is     qu'il y a des motifs raisonnables de croire qu'il est
necessary in the public interest to issue this Warrant  nécessaire dans l'intérêt public de décerner le présent
for the Arrest of the Accused.  {507(4); 512(1)}       mandat pour l'arrestation du prévenu.  {507(4); 512(1)}

THIS IS, THEREFORE, TO COMMAND YOU, IN HER MAJESTY´S NAME,   À CES CAUSES, LES PRÉSENTES ONT POUR OBJET DE VOUS
FORTHWITH TO ARREST THE SAID ACCUSED AND TO BRING HIM       ENJOINDRE, au nom de Sa Majesté, d´arrêter immédiatement
BEFORE                                                      ledit prévenu et de l´amener devant
   ME OR ANY OTHER JUSTICE OF THE PEACE IN AND FOR THE PROVINCE OF ALBERTA,

TO BE DEALT WITH ACCORDING TO LAW.              pour qu`il soit traité selon la loi.

TERMS AND CONDITIONS IF ANY:
Modalités:

DATED THIS/Fait le  7TH DAY OF OCTOBER, 2015  AT/à EDMONTON
IN THE PROVINCE OF ALBERTA.                     dans la province d´Alberta.

ISSUED BY: DOUGLAS, S.

                                      PROVINCIAL JUDGE OR JUSTICE, REGISTRAR, CLERK OF THE COURT
                                      Juge provincial ou juge de paix, registraire, greffier du tribunal

---

CANADA                  E N D O R S E M E N T   O F   W A R R A N T   FORM 29           Formule 2
PROVINCE OF ALBERTA          V i s a   d u   m a n d a t              CRIMINAL CODE      Code criminel
Province d`Alberta                                                   SECTION 499 and      Article 499 et
                                                                     SUBSECTION 507(6)  Paragraphe 507(6)

WHEREAS THIS WARRANT IS ISSUED UNDER SECTION 507, 508 OR    ATTENDU QUE le présent mandat est décerné en vertu des
512 OF THE CRIMINAL CODE IN RESPECT OF AN OFFENCE OTHER     articles 507, 508 ou 512 du code criminel, relativement à
THAN AN OFFENCE MENTIONED IN SECTION 522 OF THE CRIMINAL    une infraction autre que celles visées à l´article 522,
CODE, I HEREBY AUTHORIZE THE RELEASE OF THE ACCUSED         j´autorise par les présentes la mise en liberté du prévenu
PURSUANT TO SECTION 499 OF THAT ACT.                        en application de l´article 499 de cette loi.

                            **This is Exhibit " B " referred to in the**

DATED THIS/Fait le  7TH DAY OF OCTOBER, **Affidavit of** AT/à EDMONTON
IN THE PROVINCE OF ALBERTA.  *Terry E. Hofmann*          dans la province d´Alberta.

IN THE MATTER of a request by Canada for the
Extradition of Jason STEADMAN from the
United States of America
With respect to offences under the *Criminal Code*

---

### AFFIDAVIT OF FACTS OF ROB BILAWEY

---

I, Rob BILAWEY, of the City of Edmonton, Province of Alberta, Canada, a police officer, MAKE OATH AND SAY AS FOLLOWS:

## A.      INTRODUCTION

1.       I am a Detective with the Edmonton Police Service (EPS) and have been employed with the EPS since September 1997. Since 2011, I have been assigned to the Homicide Section – Major Crimes Branch.

2.       I was one of the task investigators in the case of Regina vs. Jason STEADMAN (STEADMAN). My involvement in this investigation commenced on June 5, 2015, as part of a missing person's investigation (EPS File #15-78318).

3.       As one of the task Investigators, I have personal knowledge of the matters hereinafter set out, except where noted. Where my knowledge is based upon information from other sources, I have stated the sources in question and say now that I believe this information to be true.

## A.      CHARGES FOR WHICH EXTRADITION IS SOUGHT

4.       Canada is seeking the extradition of STEADMAN for first degree murder contrary to Section 235(1) of the *Criminal Code* and arson contrary to Section 434 of the *Criminal Code* These offences are alleged to have been committed in Edmonton and Calgary, Alberta on or about May 31, 2015.

## B.   OVERVIEW OF INVESTIGATION

5.      Dwayne DEMKIW (Date of Birth: 1972⬛⬛⬛) (DEMKIW) has not been seen or heard from by friends or family since May 31, 2015.



This photo was taken on May 30, 2015 at the Oil Lamp restaurant in Edmonton, using DEMKIW's own phone.  The photo was uploaded to Facebook that night.

6.      DEMKIW has not shown up for either of his jobs.

7.      DEMKIW, who has a habit of being extremely active on social media has not made any posts or comments.

8.      DEMKIW has not returned home.

9.      DEMKIW has not contacted any of his friends.

10.     DEMKIW has not contacted any family members.

11.     DEMKIW has not accessed any of his bank accounts or used any of his credit/debit cards.

12.     DEMKIW is believed to be deceased.

13.      On April 05, 2016, Dwayne and Marjorie TYRKALO found human remains in a wooded area near Innisfail.  On April 15, 2016, a Medical Examiner confirmed the identity of

the found remains as DEMKIW, through dental records.

14.     It is believed that Jason STEADMAN (1974 ▓▓▓) alias Stephen/Rory PRESTON (1974▓▓▓) fled the United States sometime after a probation appointment on July 25, 2012. STEADMAN obtained Robert AUBREY-MAXWELL's non-photo identification and on September 12, 2012 he had his photo taken for identification in the name of Robert AUBREY-MAXWELL (1989▓▓▓). STEADMAN then travelled to Alberta, where on November 24, 2012 he used the BC photo identification in the name of Robert AUBREY-MAXWELL to obtain an Alberta operator's license in the same false name.

15.     STEADMAN, while living in Alberta as Robert AUBREY-MAXWELL met and dated Dwayne DEMKIW's ex-girlfriend Angel CHALIFOUX, which caused friction between STEADMAN and DEMKIW. On May 31, 2015, it is believed that STEADMAN accosted DEMKIW at the rear of Revolution Entertainment located at 14918 128 Avenue, leaving behind a knife sheath and cap with his DNA in it. It is here that STEADMAN is believed to have overpowered DEMKIW and caused injury sufficient to cause DEMKIW's death. STEADMAN then disposed of DEMKIW's body, and drove DEMKIW's car to Calgary, setting it on fire, likely to destroy forensic evidence.

16.     STEADMAN then returned to Edmonton via Greyhound bus, travelled to Vancouver, B.C. and disappeared. In the box of his abandoned truck located in Vancouver was DNA that is a forensic match to the DNA from the Revolution Entertainment scene. All of this DNA is identified to Jason STEADMAN.

## C.    SUMMARY OF EVIDENCE

### (i)    DEMKIW's employment and the period between the evening of May 30, 2015 and May 31 around 4:30.

17.     DEMKIW was a full time truck driver at Krall Trucking with a daily route that took him from Edmonton to Calgary and back 5 nights per week. On weekends, DEMKIW worked part time as a Limousine driver for Revolution Entertainment located at 14918 128 Avenue. Edmonton, Alberta. Both his employers have stated that DEMKIW was known as an extremely reliable employee.  Donna KRALL, owner of Krall Trucking, stated that they are contracted out

by Fedex and she stated that DEMKIW was a very reliable employee. Ade USULANLELE, supervisor at Fedex, stated that DEMKIW was "a good employee who was always punctual and reliable". Mason HARGREAVES, owner of Revolution Limousine stated that he never had any issues with DEMKIW and he was always well prepared.

18.     During the evening of May 30 2015, DEMKIW attended a birthday function for a friend of his which was being held at The Oil Lamp restaurant in downtown Edmonton. He was dressed in a suit as he had to leave the party at approximately 2100 hours to begin his part time limousine job for the evening. This job was to last from approximately 2130 hours on the May 30 – 0300 hours on the May 31, 2015. He had arranged with friends at the birthday party to contact them when he was done his Limousine job as they expected to still be socializing and he could rejoin them. According to Kalya POLIHRONOPOULOS, who's birthday party had been at the Oil Lamp restaurant, DEMKIW was supposed to attend a birthday function at her residence when he got off work at 0300 hours. POLIHRONOPOULOS stated she was surprised that DEMKIW never contacted her when he was finished work to say if he would be going to the party or not.

19.     When Revolution Entertainment Limousine driver Sandra WOROBEC returned to Revolution Entertainment at the end of her shift at 2130 hours on May 30, she turned the limousine over to DEMKIW. DEMKIW left Revolution Limousine to start his shift while WOROBEC was still at the office. When WORBEC left the office she noted DEMKIW's personal vehicle parked at the rear of the location in his usual spot.

20.     Driver logs and interior surveillance video at Revolution Entertainment show that DEMKIW returned to the business shortly after 0300 hours on May 30, 2015 and parked the Limousine in the shop where he cleaned the vehicle so it was ready to go out the following day. DEMKIW left the shop alone, via the rear door at approximately 0400 hours on May 30, 2015.

21.     The clients that DEMKIW was driving in his Limousine on the evening of May 30, 2015 have been identified and interviewed; they report that nothing remarkable occurred during that evening. Their timeline with respect to when and where they were picked up and dropped off is consistent with DEMKIW's driver logs of that shift. The clients are not considered

suspects in this occurrence.

22.     Revolution Entertainment employee Dan BROADBENT stated that on May 31, 2015, at 0430 hours, he arrived at Revolution Entertainment to unload his DJ equipment and noted that DEMKIW's car was not parked at the location, the business was secure, and all was in order.



Rear door of Revolution Entertainment and planter

### *(ii)*     **DEMKIW's car on fire in Calgary on May 31 around 10:50.**

23.     On May 31, 2015, at 1050 hours, Calgary Fire Department (CFD) responded to a parkade in South East Calgary on report of a car fire. At that location they located a 1992 Black Acura with the engine running, no license plate attached and a fire burning in the trunk area. An unidentified male wearing khaki cargo shorts, a white t-shirt and sandals, was observed running from the location.  He appeared to be carrying a license plate. CFD extinguished the fire and contacted the Calgary Police Service (CPS) to conduct an Arson investigation. CPS members attended the location and determined thought the vehicle's Vehicle Identification Number (VIN) that the burnt car was owned by Dwayne DEMKIW.



This photo of DEMKIW's 2002 Acura on fire in Calgary was taken by City of Calgary Bylaw Officer Nathan SAWATZKY.

24.      This vehicle fire occurred on Sunday May 31, 2015 at 1050 hours. The parkade was empty except for the burning vehicle, as evidenced by the photo of the burning vehicle. A civilian witness, Gabriel ZUKIWSKI-LAWSON was walking past the parkade and heard a noise which immediately drew his attention to the burning car. Simultaneous to hearing the noise and seeing the burning car, ZUKIWSKI-LAWSON saw a male walking out of the parkade. ZUKIWSKI-LAWSON's perception was that the male was associated to the burning vehicle and he took a video of the male with his iPhone. ZUKIWSKI-LAWSON believed that this male was associated to the burning vehicle based on his actions of leaving the parkade carrying a licence plate and looking back at the vehicle which was visibly on fire.  The male then removed a shirt that he was wearing and wrapped the licence plate to conceal it in his shirt. The male is believed to be STEADMAN as evidenced below.



Male fleeing scene of burning car

This is a still photo of the video taken by Gabriel ZUKIWSKI-LAWSON on his iPhone. The video was taken at approximately 1050 hours on May 31, 2016 in the area of Bonaventure Drive / 86 Avenue SE, Calgary when ZUKIWSKI-LAWSON observed the male walking away from the burning vehicle.

25.     The following is an excerpt of ZUKIWSKI-LAWSON's statement to investigators at the time:

> I was walking northbound on the sidewalk of Macleod Trail and I heard a noise at the parkade and looked over to see what it was. I saw a male walking northbound out of the parkade into the alley, looking back at a vehicle which was visibly on fire. The male had a license plate in his hand. The male walked westbound around the end of a strip mall. Once at the end of the strip mall, the male took off a dark grey t-shirt and wrapped it around the license plate. The male continued walking away northbound.

26.     The direction the male was walking is consistent with going to the nearby C-Train station (commuter rail system). The video, taken by ZUKIWSKI-LAWSON, captures the male running from the parkade until he changes his shirt and wraps up the license plate, then the male begins walking from the area. The distance between Edmonton and Calgary is 325 Km (201 Mi).

27.     Although the male observed running from DEMKIW's burning car cannot be positively identified, it is not DEMKIW, as DEMKIW has been described as bald, and the male in the video has a full head of hair. CHALIFOUX also looked at the photo and confirmed that is was not DEMKIW.

### (iii)    DEMKIW's friends are notified of his disappearance – search of DEMKIW's IPhone.

28.     On May 31, 2015, attempts to contact DEMKIW through his listed registered owner information were unsuccessful. CPS investigators were able to access a list of contacts for DEMKIW from a non-password protected iPod in his car. Although they were not able to locate DEMKIW, between 1212 hours and 1232 hours, they spoke to DEMKIW's father, Eugene DEMKIW and brother, Darren DEMKIW. After speaking to Eugene and Darren DEMKIW, investigators were able to determine that DEMKIW had worked until the early morning hours at Revolution Entertainment and he was most likely at home sleeping.

29.     DEMKIW's roommate Brian BALLENDINE, and DEMKIW's former common-law, Angel CHALIFOUX were alerted to the circumstances surrounding DEMKIW's recovered burning car as CHALIFOUX had been contacted by members of the CPS Arson Unit on the morning of May 31, 2015. BALLENDINE and DEMKIW lived together as roommates. CHALIFOUX was DEMKIWS ex-girlfriend and current friend. CHALIFOUX has her own residence but stays over at the BALLENDINE/DEMKIW residence on occasion. BALLENDINE and CHALIFOUX were able to state that DEMKIW was not at home as he was expected to be. It was also determined that DEMKIW did not contact the friends from the previous evenings' birthday party to meet up with them after he finished work as had been the plan.

30.     Darren BOISVERT, another friend in the DEMKIW friend group after hearing of DEMKIW's car fire in Calgary and being aware that nobody in their group had been able to contact DEMKIW, went to the Revolution Limousine offices. On his arrival, he located a Gerber machete sheath (without corresponding knife) and a "North Face" cap, lying together in a raised planter at the rear of the building, not far from where DEMKIW would have exited Revolution Entertainment and in the vicinity of where his car would have been parked.

BOISVERT used gloves and placed the items in a plastic bag. BOISVERT turned these items over to Edmonton Police Service (EPS) investigators on May 31, 2015.



This photo was taken by Darren BOISVERT on May 31, 2015 at the Revolution Limousine offices, located at 14918 128 Avenue, Edmonton. This photo shows a baseball cap and an 18 inch knife sheath, without the corresponding knife, that was located in a planter next to the overhead garage door and employee entrance to Revolution Limousine.

31.     During the evening on May 31, 2015, BALLENDINE and BOISVERT attended the trucking company where DEMKIW was, by this time, supposed to be at work and learned that DEMKIW had not shown up for his shift. DEMKIW's shift was supposed to start at 2000 hours on May 31, 2015. This was also very out of character. DEMKIW's supervisor, Ade USULANLELE stated that DEMKIW was a good employee who was always punctual and reliable.

32.     On May 31, 2015, at approximately 1715 hours, after speaking to members of the CPS Arson Unit who were attempting to locate DEMKIW, CHALIFOUX conducted a "Find My iPhone" check for DEMKIW's phone and determined that it's last known location was at 184 Street/Anthony Henday Drive, Edmonton, at 0530 hours that day. At approximately 2000 hours – 2100 hours, May 31, 2015, she and BALLENDINE attended this location to look for the phone but could not locate it. The Anthony Henday Drive at 184 Street is a six (6) lane major freeway system, which contains a number of bridge structures and overpasses that cross a

major river and ravine system. This is the most direct vehicular route between Revolution Entertainment and the main highway between Edmonton and Calgary.

33.     On June 07, 2015, a police search of 184 Street/Anthony Henday Drive located an iPhone which appeared to have been intentionally destroyed. The cell phone was located on the southbound portion of Anthony Henday Drive, on a bridge over a ravine. The phone was lying on the pavement along the concrete wall that separates the bridge from the ravine a considerable distance below. The iPhone was examined by members of the EPS Technological Crimes Unit, and based on the damage and marks on the phone they believed the phone was intentionally bent and broken with a vise or pliers. The location of the phone was 21 Km (13 Mi) from Revolution Entertainment and 304 Km (189 Mi) from the location of the burning vehicle.  It is the investigative opinion that the phone was thrown from a moving vehicle, with the expectation that it would go over the edge of the bridge and down into the ravine below, however, the throw was just short of its intended destination and ended up against the concrete abutment.

34.     The recovered Iphone (photo below) was confirmed through the SIM card to be DEMKIW's phone.



This photo was taken by EPS Crime Scene Investigation Unit (CSIU) member, Constable Allen PARK on June 07, 2015.

           ***(iv)***    **Video evidence in the area of the C-Train station and identification of suspect**